

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| WILLIAM D.C. VALENTINE,<br><br>　　　　　Appellant,<br><br>v.<br><br>LAWRENCE M. ELLIOTT, et al.,<br><br>　　　　　Appellees. | Civil Number 3:07-CV-160 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia's Rule 12(b)(6) dismissal of Appellant William D.C. Valentine's adversary proceeding, In re Valentine, 357 B.R. 744 (Bankr. E.D. Va. 2007) (Tice, C.J.). For the reasons below, this Court AFFIRMS the Bankruptcy Court's decision.

## I. Background

On May 10, 2006, William D.C. Valentine filed the entitled adversary proceeding alleging the named defendants[1] (1) seized, without due process and in the absence of jurisdiction, Edna J. Valentine ("Debtor")'s property, (2) committed numerous torts, including fraud, forgery, and interference with an expectation of a gift,[2] and (3)

---

[1] The defendants in this case include: The Estate of Daniel B. Delaney, the beneficiaries of the Delaney Estate, Christopher G. Hoge (the Delaney Estate's personal representative), Lawrence M. Elliot (Delaney Estate's former personal representative), the District of Columbia, and the District of Columbia Courts.

[2] Appellant's claims, as enumerated above, are cursorily alleged in the Complaint. Specifically, Appellant claims the defendants "usurp[ed] property by a probate court without proper jurisdiction to do so; . . . [committed] tortuous misconduct as well as conspire[ed] to take property and liberty under color of state law in violation of civil rights." (Compl. 3.) Appellant further makes mention of "fraud upon the probate

conspired to violate the Debtor's civil rights by probating a fraudulent will. (Compl. 6—7; see also In re Valentine, 357 B.R. at 752 (clarifying Valentine's section 1983 claims).) While presented to the Bankruptcy Court in an adversary proceeding, the factual basis underlying these claims arise out of a dispute over the District of Columbia Superior Court, Probate Division (the "probate court")'s disposition of the Estate of Daniel B. Delaney ("Delaney Estate" or "Estate").

### A.

Daniel B. Delaney died on August 6, 1993. Three weeks before his death, on July 18, 1993, Delaney—who never married and was not survived by any children or siblings—executed a will ("the first will") that left his estate of $1.8 million to Edna J. Valentine, with whom he had "a personal relationship" in the 1930s, from 1965—1982, and again from 1985 until he died. The next day, July 19th, Delaney gave Debtor a financial power of attorney to allow her access to his Merrill Lynch account. On July 27th, Debtor opened a joint account with Delaney at Merrill Lynch, and obtained Delaney's signature authorizing her to transfer assets from his personal account to the joint account. The account transfer was completed on August 3, 1993. After Delaney died, Debtor transferred the contents of an account Delaney held at Virginia State University Federal Credit Union to an account in her name. Debtor transferred a total of $462,000.00 from Delaney's accounts to herself.

The first will was admitted into probate in the District of Columbia on September 7, 1993. Subsequently, a will that Delaney executed on July 31, 1993 ("the second will") was discovered; the admission of the first will was vacated and the second will was

---

court," the "filing of two forged wills, and... related false claims," as well as state law violations for "the interference with [Debtor's] expectation of a gift." (Id. at 6.)

2

admitted to probate on April 4, 1994. Under the second will, the Debtor was to receive a relatively minor cash bequest, with the bulk of the estate being distributed among several charities (e.g., the National Association for the Advancement of Colored People). Both wills named Lawrence M. Elliot, Delaney's cousin and personal representative, as Executor. Debtor was mailed notice of the appointment of the personal representative on August 25, 1993.

On June 27, 1995, the Executor filed a subsidiary proceeding against Debtor in the probate matter alleging she wrongfully held estate funds and seeking restitution. After resolving a challenge to jurisdiction and following a hearing on a Motion for Summary Judgment, the probate court ordered the Debtor to place the disputed funds in an escrow account, and appointed an auditor to prepare an accounting of the funds. Based on the audit, the probate court determined the funds held by Debtor were properly funds of the Delaney Estate. The court additionally held that because Debtor challenged the second will, which contained an <u>in terrorem</u> clause, the property bequeathed to Debtor in the second will reverted to the Delaney Estate to be distributed according to the terms of the second will. Further, during the Motion for Summary Judgment hearing, as well as in her February 1, 1996 Answer, Debtor asserted her knowledge of the second will but claimed the will was "a forgery and a fraud," and that she was the decedent's common law wife. (D.C. Probate Court Order 2–3, March 31, 1997; D.C. Probate Court Order 4–5, June 26, 1997.) While the probate court held that the Debtor had standing to challenge the will, the court stated she failed to contest the will within the six-month time period proscribed by D.C. Code § 20-903(a)(1), and therefore the fraud claim was barred. Debtor again pressed her claims of fraud in an

3

April 7, 1997 Complaint. The probate court reiterated its position dismissing Debtor's claims in a June 26, 1997 Order.

B.

The Delaney Estate probate proceedings resulted in fourteen appeals, which were consolidated and decided by the District of Columbia Court of Appeals ("D.C. Court of Appeals" or "Court of Appeals") on March 27, 2003. See In re Estate of Daniel B. Delaney, 819 A.2d 968 (D.C. 2003), cert. denied, 540 U.S. 1109 (2004). The Court of Appeals affirmed all of the challenged orders and judgments,[3] and the U.S. Supreme Court denied Debtor's petition for certiorari. On February 27, 2001, during the pendency of the consolidated appeals, Debtor filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Virginia. See In re Edna J. Valentine, 357 B.R. 744, 751 (Bankr. E.D. Va. 2007). Debtor subsequently transferred all of her rights and claims to the Delaney Estate to the bankruptcy trustee, who sold the claims to Raymond J. Valentine and William D.C. Valentine for $50,000.00. The sale was approved on July 15, 2002.[4]

---

[3] The consolidated appeals decided five central issues: (1) whether a challenge to the will and a claim for status as common law wife were properly dismissed as time-barred; (2) whether certain disputed accounts were correctly determined to be part of the estate; (3) whether compensation was properly denied to the original personal representative and reduced for tax counsel to the estate; (4) whether attorneys' fees were properly denied to the estate and the residuary beneficiaries; and (5) whether the original personal representative was properly removed. In re Estate of Daniel B. Delaney, 819 A.2d at 977. The court resolved each issue in the affirmative.

[4] Further procedural history leading up to the instant appeal reveals that on May 23, 2002, Debtor's bankruptcy trustee removed portions of the probate case to the District Court for the District of Columbia. (See Br. for Appellee's D.C. and D.C. Courts 5.) The district court abstained from exercising jurisdiction and remanded the case back to the Court of Appeals. (Id.)

4

On May 10, 2006, the Appellant, William Valentine, filed[5] an adversary proceeding against the defendants. The adversary proceeding alleged three claims. On a Rule 12(b)(6) Motion by Defendants, the Bankruptcy Court dismissed each claim with prejudice holding that (1) the state tort and fraud claims were decided by the D.C. Court of Appeals and therefore the court lacked jurisdiction to review the rulings, and (2) the Appellant's civil rights claim failed to satisfy state action, and was further barred by res judicata and statutory time limits. This appeal ensued.

## II. Jurisdiction and Standard of Review

Appeals from core proceedings in the bankruptcy court are governed by 28 U.S.C. § 158, which states that district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" and "with leave of the court, from other interlocutory orders and decrees." While a bankruptcy court may hear non-core proceedings, a final judgment in these matters must be entered by the district court unless the parties consent to the bankruptcy court's jurisdiction. See Celotex Corp. v. Edwards, 514 U.S. 300, 321–22 (1995), Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 403 (4th Cir. 1992). Here, the Bankruptcy Court determined Appellant's Complaint was a non-core proceeding, but because the parties consented to jurisdiction, a final judgment was entered. In re Valentine, 357 B.R. at 749–52. This Court, therefore, has jurisdiction to hear Appellant's bankruptcy appeal pursuant to 28 U.S.C. ' 158.

In reviewing a bankruptcy court's judgment, the district court reviews legal conclusions *de novo* and findings of facts for clear error. Tidewater Fin. Co. v. Williams,

---

[5] The original Complaint was filed by Debtor and Valentine, who is a successor in interest to the bankruptcy trustee in the probate claims. Debtor was dismissed from the case as a party plaintiff on July 26, 2006, as lacking standing to bring the proceeding. In re Edna J. Valentine, 357 B.R. at 752.

5

498 F.3d 249, 254 (4th Cir. 2007). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); accord In re Mosko, 515 F.3d 319, 324 (4th Cir. 2008). However, decisions that are committed to a bankruptcy court's discretion are reviewed for abuse of discretion. See, e.g., In re French, 499 F.3d 345, 357 n.11 (4th Cir. 2007).

### III. Analysis

Valentine's statement of issues upon appeal identifies eleven issues for the Court to consider.[6] These issues have been consolidated into three overarching issues:

---

[6] Valentine identifies the following issues upon appeal:

"(1) Whether it is manifestly unjust and clearly erroneous to dismiss, with prejudice, a pro se complaint filed by a non-lawyer, alleging, and/or attempting to allege, federal, and constitutional violations as vague as to particularities of a complex fraud wherein the facts alleged support a finding of a violation of 42 U.S.C. ' 1983 et seq., and civil and criminal fraud upon the District of Columbia Court and the estate of the debtor; where [i] clear evidence of false filings and forgery was presented as attachments to the complaint, and [ii] again presented in evidentiary submissions requested by the Bankruptcy Court, and [iii] described in detail in a discovery deposition to preserve evidence of the existence and methodology of the several specific acts of fraud committed utilizing the power of the District of Columbia against the debtor and her estate herein, damaging the debtor by taking her property without due process, and thereby causing the bankruptcy;

(2) Whether the Bankruptcy Court erred when it applied as a bar the Rooker Feldman principle, citing D.C. Court of Appeals v. Feldman . . . as upholding the decisions of the District of Columbia Court system while erroneously ignoring the effect of evidence and allegations [of] substantial violations of federal law, in particular inter alia, a fraudulent conspiracy in violation of 42 U.S.C. ' 1963 et seq.;

(3) Whether the Bankruptcy Court erred in applying the principles of *res judicata* and issue preclusion to the several untried and unresolved federal claims alleged by plaintiff, thereby ignoring the express duty to do so contained in Marshall v. Marshall, . . . and [] whether the Bankruptcy Trustee, in whose shoes the plaintiff stands, is subject to issue preclusion or res judicata since he meets many of the well recognized exceptions to application of res judicata and/or issue preclusion . . . .;

(4) Whether the Federal Bankruptcy Court erred as a matter of law when it considered matters outside of the four corners of the [C]omplaint and attachments and dismissed the [C]omplaint with prejudice despite evidentiary submissions of both sets of parties;

6

(1) whether the Bankruptcy Court erred by considering documents not referred to in the Complaint without converting the Motion to Dismiss into a motion for summary judgment; (2) whether the Bankruptcy Court properly applied the Rooker-Feldman doctrine to dismiss Appellant's fraud, forgery, civil rights, and due process claims for lack of subject matter jurisdiction; and (3) whether the Bankruptcy Court properly dismissed Appellant's 42 U.S.C. ' 1983 claim holding that it was barred by res judicata

---

   (5) Whether the preceding actions by the trial converted the pending Motion to Dismiss to a Motion for Summary Judgment [,] and whether the resulting Motion for Summary Judgment would have been properly denied [] because material facts were in dispute;
   (6) Whether the factual allegations and evidence attached to the Complaint by [P]laintiff, standing in the shoes of the bankruptcy trustee, were sufficient to preclude a Rule 12(b)(6) dismissal of the multiple alleged civil rights violations . . . where the plaintiff alleged a misuse of [] power of [sic] the District of Columbia Courts by the use of forgery and misleading the debtor[,] coupled with procedural due process violations;
   (7) Whether the actions of the state [sic] probate court, at the urging of the defendants and their counsel, in barring the debtor's further amendment of her pleadings in the state [sic] court to include federal claims [] [and o]rdering 'no further documents to be filed' [is] in violation of procedural due process and civil rights . . . and [whether the court's] [] fail[ure] to process the debtor's defenses . . . to fraudulent activities of the . . . beneficiaries to the forged will, resulted in judgments acquired in the presence of fraud [and therefore] preclude[s] the application of statutes of limitations under the principles of [e]quitable [t]olling or [e]quitable [e]stoppel or waiver;
   (8) Whether the Bankruptcy Court clearly erred in its underlying factual determinations when it considered the docket sheets of the United States District Court for the District of Columbia's unprocessed federal claims, and in reliance upon the erroneous facts thereby derived, without hearing, erroneously determined . . . that the Bankruptcy Trustee's claims of Federal Law violations . . . were not properly before the United States District Court for the District of Columbia . . . .;
   (9) Whether under the principles of Marshall [v. Marshall, 547 U.S. 293 (2006),] the trial court erred if [sic] failing to address or process violations of federal constitutional and civil rights law which were independent of any issue processed by the probate court or the appellate courts in the District of Columbia and which were never subject to any substantive trial or hearing in the State Courts or elsewhere;
   (10) Whether the bankruptcy trustee's complaints of multiple violations of federal law, by the state [sic] [c]ourt(s) [sic] were timely filed in the United States District Court for the District of Columbia . . . .;
   (11) Whether the trial [sic] court erred in its conclusion of fact (which must be taken to most favor the plaintiff) that plaintiffs never timely or properly alleged a section 1983 conspiracy?"

and statutory time limits, and further failed to allege state action. Each issue will be addressed in turn.

A.

Appellant's first argument is that the Bankruptcy Court erred by dismissing the Complaint under Federal Rule of Civil Procedure 12(b)(6), rather than converting the Motion to one for summary judgment. Namely, Appellant argues the Bankruptcy Court's review of state and district court records in the related probate matter exceeded the scope of the Rule 12(b)(6) Motion, and factual allegations presented in the Complaint and accompanying attachments clearly support Appellant's claims for relief. This Court reviews the Bankruptcy Court's application of the Rule 12(b)(6) standard de novo, and in doing so AFFIRMS the court's dismissal of Appellant's Complaint under Rule 12(b)(6) rather than converting the Motion to one for summary judgment.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard all factual allegations in the complaint as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), as well as any facts that could be proved consistent with those allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Judgment should be entered for the movant when the pleadings fail to state any cognizable claim for relief, and therefore, the issue can be decided as a matter of law. Zeran v. America Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997).

Complaints that are barred by collateral estoppel and res judicata fail to state a cognizable claim for relief. See e.g. Davani v. Clement, 263 Fed. Appx. 296 (4th Cir. 2008) (upholding the district court's Rule 12(b)(6) dismissal under the doctrine of collateral estoppel); Thomas v. Consolidation Coal Co., 380 F.2d 69, 75 (4th Cir. 1967) (holding that dismissal on res judicata grounds is proper under Rule 12(b)(6)). Similarly, claims which are time-barred may be dismissed under Rule 12(b)(6). Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc) ("Where facts sufficient to rule on an affirmative defense—including the defense that the plaintiff's claim is time-barred—are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).") (internal citations omitted).

In ruling on such a motion, a court may not consider documents outside the complaint, except for "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." Witthohn v. Federal Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006); see also Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000) (stating that "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact"), Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (taking judicial notice of public documents, such as court records, even when the documents were neither referenced in nor integral to plaintiff's complaint). If, however, additional matters are presented to the Court and not excluded, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d).

Here, Appellant argues the Bankruptcy Court erroneously reviewed state and district court records without converting the Motion to one for summary judgment.

Appellant's arguments are incorrect. The Bankruptcy Court explicitly identified the documents it utilized in its decision: (1) the Notice of Removal from the Court of Appeals to the D.C. District Court, (2) the D.C. District Court's opinion and docket sheet, and (3) the Court of Appeals decision in In re Delaney. In re Valentine, 357 B.R. at 751–54. No other documents were considered. See id. at 748 (noting "the court has not considered any evidence outside of the complaint proffered by the plaintiff or the defendants"). As the enumerated documents are clearly permissible "official public records" that may be reviewed in a Rule 12(b)(6) motion, the Bankruptcy Court did not err in declining to convert the Motion to one for summary judgment. Further, because Appellant does not challenge whether these public records are authentic, this Court AFFIRMS the Bankruptcy Court's application of the Rule 12(b)(6) standard in dismissing the Complaint.

B.

Appellant's second argument asserts the Bankruptcy Court erred by applying the Rooker-Feldman doctrine to dismiss Appellant's fraud, forgery, civil rights, and due process claims for lack of subject matter jurisdiction. The Bankruptcy Court's application of the Rooker-Feldman doctrine is reviewed *de novo*.

The Rooker-Feldman abstention doctrine prohibits a federal court from reviewing claims that stem from a state court judgment, if the federal claim requires a "determination that the state court wrongly decided the issues before it." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997). This doctrine is applicable to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Claims that were actually raised before the state court, as well as claims that "are inextricably intertwined with state court determinations," are subject to the doctrine. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983). This tenet recognizes that Congress vested federal court review of state court judgments exclusively in the Supreme Court and, thus, other federal courts lack jurisdiction over these matters. See 28 U.S.C. §1257.

In the present case, the Bankruptcy Court's January 4, 2007 Opinion dismissed Appellant's state tort, fraud, and due process claims, and further dismissed-in-part Appellant's section 1983 claim, holding that the D.C. Court of Appeals had previously decided the pertinent issues related to these claims. Accordingly, the Bankruptcy Court determined it lacked subject matter jurisdiction to hear the claims. Upon review, this Court AFFIRMS the Bankruptcy Court's determination.

Appellant's May 2006 Complaint, though lengthy, cursorily alleges that (1) the District of Columbia Courts, in connection with a subsidiary proceeding in the probate matter, seized without due process and in the absence of jurisdiction the Debtor's property by incorrectly characterizing it as property of the Delaney Estate, (2) the Delaney Estate, and its personal representatives and beneficiaries, committed numerous

torts—including fraud, forgery, and interference with an expectation of a gift—by filing two forged wills and a false complaint against the Debtor, and (3) the named Defendants conspired to violate the Debtor's civil rights by probating a fraudulent will. (Compl. 5–6.) All of Appellant's claims assert injuries allegedly caused by the probating of Delaney's July 31, 1993 will, a will Debtor alleges is forged. These challenges were raised in the probate matter, and dismissed by the D.C. Court of Appeals in its March 2003 decision. See In re Delaney, 819 A.2d 968 (D.C. 2003), cert. denied, sub nom., Valentine-Staats v. Elliott, 540 U.S. 1109 (2004). Specifically, the Court of Appeals affirmed the probate court's determination that the Debtor's challenge to the validity of the July 31st will and claims of fraud were time-barred, and that the allegedly gifted financial accounts were correctly deemed to be part of the decedent's probate estate. Id. at 978–84. The decision of the Court of Appeals was a final judgment on the merits by the highest court of the District of Columbia, and therefore the Rooker-Feldman doctrine is implicated. As the Bankruptcy Court's decision on these claims would require a "determination that the state court wrongly decided these same issues," the Bankruptcy Court correctly determined it lacked subject matter jurisdiction. Accordingly, the court's determination is AFFIRMED.

Appellant further asserts the Supreme Court's decision in Marshall v. Marshall, 547 U.S. 293 (2006), applies to overrule the Rooker-Feldman doctrine and grant the federal court jurisdiction to hear Appellant's claims. (Appellant's Reply Br. 3.) Appellant is correct that the Supreme Court in Marshall has confirmed that federal courts may exercise jurisdiction over *some* claims related to a decedent's estate, but these instances are limited. Hence, the Supreme Court has noted that "while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in

the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." Marshall, 326 U.S. at 310. The Marshall Court further determined that where the petitioner's claims did not involve "the administration of an estate, the probate of a will, or any other purely probate matter," a federal court can adjudicate these claims, consistent with established federal jurisdiction. Id. at 312. However, Marshall does not provide federal courts with jurisdiction in matters, similar to here, where Appellant's claims in essence seek to annul the decedent's will. See id. at 311–12 (stating that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate"). Accordingly, we AFFIRM the Bankruptcy Court's dismissal of these claims pursuant to the Rooker-Feldman doctrine, and hold that Marshall does not apply to state otherwise.

C.

Appellant's third argument asserts the Bankruptcy Court erred by dismissing Appellant's 42 U.S.C. ' 1983 claim, holding it was barred by res judicata and statutory time limits, and further failed to allege state action. This Court reviews the Bankruptcy Court's determination *de novo*. As the Bankruptcy Court dismissed this claim primarily because Appellant failed to sufficiently plead an injury or state action, this Court will only focus on these two dispositive issues. See In re Valentine, 357 B.R. at 754 (stating "[w]ere the court to find sufficient injury and state action to support a ' 1983 claim, the complaint would still be dismissed because it is untimely"). In doing so, this Court AFFIRMS the Bankruptcy Court's dismissal.

### 1. Alleged Injury

Appellant's section 1983 claim asserts the named defendants conspired to violate the Debtor's civil rights by probating a fraudulent will. As stated above, the probate court dismissed these challenges and validated the July 31st will. This decision was affirmed by the D.C. Court of Appeals. Therefore, the Bankruptcy Court was correct in determining that "to the extent the §1983 claim relies upon the probating of a fraudulent will as the predicate injury, the claim must be dismissed as res judicata." In re Valentine, 357 B.R. at 754.

### 2. State Action

In order to plead a successful section 1983 claim, a party must allege the injury complained of is fairly traceable to some state action. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). A conspiracy partaken by private individuals cannot suffice to meet this state action requirement. Id. Rather, in only very specific circumstances may a private party's action, in conjunction with a state actor, meet this requirement. As such, a determination of whether state action has been adequately pled requires an examination of "the degree of the government's participation in the private party's activities." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 342 (4th Cir. 2000). In its determination, a court need not strain itself to identify some form of government action; instead, the Appellant must plead specific facts supporting this component of their conspiracy claim, in a nonconclusory fashion with concrete supporting facts. See Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reiterating that where the facts in a complaint "do not permit the court to infer more than the mere possibility of

misconduct" the pleader has failed to show they are entitled to relief, as required by Fed. R. Civ. Pro. 8(a)(2)).

Here, it is clear from the Complaint and Plaintiff's statements during the Motion's Hearing that Appellant's section 1983 claim alleges a conspiracy consisting of only private individuals. Plaintiff affirms that he does not allege a conspiracy "with members of the [D.C. Probate] Court staff, or the Court itself, but rather Elliot [the Delaney Estate's former personal representative] and ... his prior counsel, utilized the Court system to deny [Debtor] her rights." Id. at 752 (citing Mot. to Dismiss Hr'g Tr. 16, July 26, 2006). Accordingly, Appellant's conspiracy theory involves only private individuals. As such, the Bankruptcy Court correctly determined that Appellant failed to allege state action, a prerequisite for a claim under 42 U.S.C. ' 1983.

Further, as the Bankruptcy Court stated in its January 2007 Opinion, if Appellant's intent was to allege state action on the part of the probate court as a participant in the conspiracy, this too would fail as no specific factual allegations supporting such a claim has been presented. See Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action. The standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as are the state court judges here.") (citations omitted). Accordingly, this Court AFFIRMS the Bankruptcy Court's Rule 12(b)(6) dismissal of Appellant's section 1983 claim for failure to plead a plausible injury and state action.

## IV. Conclusion

For the reasons stated above, this Court AFFIRMS Judge Tice's dismissal of Appellant's adversary proceeding pursuant to Rule 12(b)(6).

It is SO ORDERED.

*/s/ James R. Spencer*
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this 12th day of August 2009.